UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/10/2018

STEVEN HIRSCH,

    Plaintiff,

        -against-

COMPLEX MEDIA, INC.,

    Defendant.

No. 18 Civ. 5488 (CM)

**DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, STRIKE CERTAIN PLEADINGS, DENYING WITHOUT PREJUDICE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND DENYING AS MOOT PLAINTIFF'S MOTION FOR JUDICIAL NOTICE**

McMahon, C.J.:

This case, which is factually very straightforward but presents a whole host of legal issues, would – in the parlance of law school – make for a good issue-spotter examination.

Plaintiff Steven Hirsch, a professional photographer, brings this action for copyright infringement, pursuant to 17 U.S.C. §§ 106, 501, against Defendant Complex Media, Inc. ("Complex"), a media organization that specializes in popular culture.

Complex has moved to dismiss this action, or, in the alternative, to strike certain pleadings, pursuant to Fed. R. Civ. P. 12(b)(6) & 12(f). Hirsch has filed a cross-motion for partial summary judgment and a supporting motion for judicial notice.

For the reasons that follow, all motions are denied.

## I.    Factual Background

The following facts are drawn from the Amended Complaint.

1

On or about January 18, 2017, Hirsch, a professional photographer in the business of licensing his photographs to online, print, and television media for a fee, captured a photograph inside a New York state courtroom of an individual named Santino Boderick, a criminal defendant who was awaiting his sentence in a gang-related criminal proceeding (hereinafter referred to as the "Photograph"). (Am. Compl. ¶ 14, Dkt. No. 14.)  Boderick was an associate and co-defendant of a prominent hip-hop artist who is known professionally as Bobby Shmurda. (*Id.*)

Hirsch, as the sole owner of the Photograph, registered it with the U.S. Copyright Office, which granted his registration, effective as of March 26, 2017, under Copyright Registration Number VA 2-036-428. (*Id.* ¶¶ 18–20; *id.* Ex. C.)

Hirsch licensed the Photograph to the New York Post's Page Six ("Page Six"). (*Id.* ¶ 15.) On January 19, 2017, Page Six published an article on its website featuring the Photograph. (*Id.* ¶ 16; *id.* Ex. B; *see also* Rebecca Rosenberg, *Bobby Shmurda's Pal Gets 130-Year Sentence, Curses Out Judge*, N.Y. Post. (Jan. 19, 2017), https://pagesix.com/2017/01/19/bobby-shmurdas-pal-gets-130-year-sentence-curses-out-judge/.)  The Page Six article included an authorship credit, also known as a "gutter credit," below the photograph identifying Hirsch as the author of the Photograph. (Am. Compl. ¶ 17; *id.* Ex. B.)  The upper right hand corner of the online version of the article also included five "share" icons that enable readers to share a hyperlink to the story, either on their various social media platforms, via e-mail, or by direct copying of the web address. (*Id.* ¶¶ 36–48.)  There is no link on the Page Six article that permits a reader to copy the Photograph by itself. (*Id.* ¶ 42.)

On or about January 19, 2017, Complex published an article on its website titled "Bobby Shmurda Associate Santino Boderick Curses Out Judge Handing Him Insanely Long Prison

Sentence." (*Id.* ¶ 21; *id.* Ex. D; *see also* Trace William Cowen, *Shmurda Associate Santino Boderick Curses Out Judge Handing Him Insanely Long Prison Sentence*, Complex (Jan. 19, 2017), https://www.complex.com/music/2017/01/bobby-shmurda-associate-santino-boderick-curses-out-judge-handing-him-prison-sentence.) The article included a video (hereinafter referred to as the "Video" or "Complex Video") that was featured prominently on the webpage and directly under the article's headline. (Am. Compl. ¶ 22.) The Video, which was 1:44 minutes long, summarized Boderick's prison sentence and recounted his affiliation with Shmurda. (*Id.* ¶ 23.) Beginning at the 0:38 second mark, the Video includes a screenshot of the Page Six article and conspicuously features Hirsch's Photograph. (*Id.* ¶ 24.) The Page Six article and Photograph remain on the Video screen until the 0:40 second mark, at which point the screen begins to blur all visual content except for the Page Six headline announcing Boderick's sentence. (*Id.*) The Page Six article and Photograph disappear completely from the Video after the 0:42 mark. (*Id.*)

Commercial advertisements appear on the face of the Complex article and adjacent to the Video. (*Id.* ¶ 26.) Neither the Complex article nor the Video credits Hirsch as the author of the Photograph, and the screenshot of the Page Six article that was incorporated into the Video cropped out Hirsch's gutter credit. (*Id.* ¶¶ 27–29.)

Hirsch did not did enter into a license agreement with Complex to use the Photograph. (*Id.* ¶ 31.) Nor did Complex ever communicate with Hirsch prior to publishing its Video seeking authorization to use the Photograph. (*Id.* ¶ 32.)

**II.     Discussion**

Hirsch filed the present action against Complex on June 18, 2018, alleging one count of copyright infringement, in violation of 17 U.S.C. §§ 106, 501.

On August 14, 2018, Complex moved to dismiss the Amended Complaint, the operative complaint in this action, or, in the alternative, to strike certain allegations from the Amended Complaint that charge Complex with a "pervasive history" of copyright infringement. (*See* Am. Compl. ¶ 13.)

Complex submits three bases for dismissal. First, it contends that its use of the Photograph was *de minimis* and, therefore, is not actionable. Second, incorporating the Photograph was fair use, according to Complex, because the Complex Video was transformative. Third, Complex argues that Hirsch has authorized unrestricted copying of the Photograph by virtue of licensing the Photograph to the New York Post, which published the Photograph online and, in so doing, permitted readers to click on any one of the five "share" icons located adjacent to the article, which enabled readers to freely share the story.

Hirsch has cross-moved for partial summary judgment under Fed. R. Civ. P. 56. He argues that he has a protectable copyright in his photograph and that Complex engaged in actual copying. In support of this contention, Hirsch has asked the Court to take judicial notice of a Certified Deposit Copy, as issued by the U.S. Copyright Office on November 9, 2018, of the Photograph.

### A.  Complex's Motion to Dismiss the Amended Complaint is Denied

When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the Court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). The Amended Complaint will survive the motion to dismiss as long as it contains "sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (internal quotation marks omitted).

In addition to the text of the Amended Complaint, the Court may consider documents that

are attached as exhibits, incorporated by reference, or are "integral" to the amended

complaint. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  Because the

Photograph and Complex Video are both incorporated by reference and integral to the Amended

Complaint, the Court may consider those items on Complex's present motion to dismiss.

Moreover, the Court need not accept the party's characterizations of those items, as "the works

themselves supersede and control contrary descriptions of them" contained in the pleadings or

elsewhere. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir.

2010).

1. *Whether Complex's Use of the Photograph Constitutes De Minimis Use*

It is undisputed that the Complex Video incorporated the Photograph in its story on

Santino Boderick when it took a screenshot of the Page Six article in which the Photograph was

featured.  Complex argues, however, that the use of Photograph was so trivial that the copying

was not actionable.

To state a claim for copyright infringement, a plaintiff must plead facts demonstrating

that (*i*) copying of the copyrighted work occurred, and (*ii*) the infringing work is "substantially

similar." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  To establish

substantial similarity, a plaintiff must show, *inter alia*, the amount that was copied is 'more than

*de minimis*.'" *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127,

131 (2d Cir. 2003) (internal citation omitted).

5

The *de minimis* analysis asks whether the copying is both quantitatively and qualitatively sufficient to support the legal conclusion that infringement, *i.e.*, actionable copying, has occurred. *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74–75 (2d Cir. 1997). The qualitative component concerns the degree of similarity between the two works, focusing on "whether an average lay observe would recognize the alleged copy as having been appropriated form the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (internal quotation marks, citation, and alterations omitted). "The quantitative component generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying." *Ringgold*, 126 F.3d at 75 (internal citation omitted). Where, as here, exact copying is at issue courts should look to the "observability" of the copied work, which, in turn, depends upon "the length of time the copied work is observable in the allegedly infringing work and such factors as focus, lighting, camera angles, and prominence." *Id.*

Because substantial similarity "typically presents an extremely close question of fact . . . questions of non-infringement have traditionally been reserved for the trier of fact." *Peter F. Gaito*, 602 F.3d at 63 (citing *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980); *but see id.* (quoting *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)).

Here, the Court concludes that a reasonable jury could find a substantial similarity between the Photograph and Complex's alleged copying of it in the Complex Video.

Certainly, there is no dispute as to the qualitative similarity between the two items: the Complex Video incorporates an exact screenshot of the Photograph and would be plainly recognizable to a lay observer. And in a quantitative sense, the Court cannot say that, as a matter

of law, Complex's use of the Photograph was so trivial so as to be inactionable.  The Photograph was featured prominently in the center of the video screen from 0:38-0:42 of the video.  (*See* Decl. of Steven Hirsch in Supp. Motion for Summ. J. Ex. D, Dkt. No. 20 (audio-visual file of Complex Video).)  For the first two seconds, the Photograph is clear as day, and its prominence unmistakable – it is *the thing* being featured in the video and takes up most of the screen.  (*Id.*) For the latter two seconds, the Photograph blurs while the Page Six headline is emphasized. While four seconds of copying – two that are clear, and two that are indistinct – in the span of a 1:44 minute video may seem insignificant, Second Circuit precedent has suggested otherwise.

In *Ringgold*, the Second Circuit considered the unauthorized use of a copyrighted poster depicting a Sunday school picnic held by the Freedom Baptist Church in Atlanta, Georgia in an episode of an HBO television series.  126 F.3d at 72.  The poster was shown, in whole or in part, nine times during a five-minute scene at the end of the episode.  The poster (or a portion thereof) was seen for 1.86 to 4.16 seconds at a time, for a total of 26.75 seconds. *Id.* at 73.  In some instances, the poster appeared at the center of the screen, while in others, the poster was partially obscured or appeared outside the camera's "framing." *Id.* at 76.  The Second Circuit overturned the district court's grant of summary judgment in favor of the HBO and, in so doing, rejected HBO's *de minimis* argument, concluding that "the principal four-to-five second segment in which almost all of the power is clearly visible, albeit in less than perfect focus, reinforced by the briefer segments in which smaller portions are visible, all totaling 26 to 27 seconds, are not *de minimis* copying." *Id.* at 77.  In so reasoning, the court took guidance from a regulation issued by the Librarian of Congress providing for royalties to be paid by public broadcasting entities for the use of published pictorial or visual works, which distinguished between a "featured" and a

"background" display, setting a higher royalty rate for the former. *Id.* (citing 37 C.F.R. § 253.8(b)(1)(i)(A)(B) (1996)).

A number of courts in this District applying *Ringgold* have concluded that a "substantially full-screen" display of an image, even those lasting less than three seconds, would not be *de minimis. Id.* In *Dyer v. V.P. Records Retail Outlet, Inc.*, No. 05 Civ. 6583 (WHP), 2008 WL 2876494, at *4 (S.D.N.Y. July 24, 2008), the court denied summary judgment on grounds of *de minimis* copying for shots in which offending images "take up most of the screen" for "almost three seconds." In *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F. Supp. 2d 1, 46 (S.D.N.Y. 2001), *remanded on other grounds*, 277 F.3d 253 (2d Cir. 2002), the court rejected *de minimis* use as a defense where the defendant copied clips "each of a short duration [] of three seconds or less" into their advertising tapes, because "they appear prominently and are plainly observable to the lay viewer." And *Hirsch v. CBS Broadcasting Inc.*, No. 17 Civ. 1860 (PAE), 2017 WL 3393845, at *4 (S.D.N.Y. Aug. 4, 2017) – a case with which the parties are surely familiar, since the "Hirsch" in that case is the same one suing here – is particularly instructive. Indeed, the facts are strikingly similar.

In that case, Hirsch took a photograph of Justin Massler, an accused stalker of Ivanka Trump, as Massler was walking outside a courthouse in Manhattan. 2017 WL 3393845, at *1. There, as here, Hirsch licensed the photograph to the New York Post, which included it in an online article. Nearly seven years later, CBS broadcasted an episode of the television show *48 Hours* titled "Stalked." One segment of the episode focused on Massler's stalking behavior and the widespread coverage it had attracted. The segment featured for "approximately two seconds" a screenshot of the New York Post article that incorporated Hirsch's photograph. *Id.* The screenshot "slowly rotated clockwise the entire time it was on screen, starting slightly skewed to

the left and ending slightly skewed to the right." *Id.* Only "roughly the top half of [Hirsch's photograph]" appeared in the video, and, like here, Hirsch's gutter credit was excised from the screen. *Id.* at *2.

In denying CBS's motion to dismiss the complaint, my colleague, the Hon. Paul Engelmayer, rejected HBO's contention that the company's copying of Hirsch's photograph was *de minimis* as a matter of law. *Id.* at *4. Conceding that the two-second duration in which the photograph was visible in the allegedly infringing work was "brief," the court rejected the suggestion that such an interval of time was *per se* insufficient to establish substantial similarity. *Id.* at *5. Rather, Judge Engelmayer concluded that dismissal was unwarranted as a matter of law at that juncture, since CBS "display[ed] a substantial proportion of [Hirsch's] [p]hoto," "occup[ying] much, although not all, of the screen." *Id.*

The Court finds *Hirsch v. CBS* to be persuasive. The interval at issue in this case is twice as long (four seconds, not two); the Photograph incorporated into the Complex Video is featured in its entirety, not cut in half; and the Photograph remained front and center of the Video screen throughout the period in which it was shown. Moreover, the two cases that Complex characterizes in its brief as "instructive" (*see* Mem. of Law in Supp. Mot. to Dismiss (Def.'s Br.) at 10, Dkt. No. 16) were expressly distinguished by Judge Engelmayer. The first, *Gottlieb Development LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 632–33 (S.D.N.Y. 2008), involved *de minimis* copying of material that, as the court described, "[was] always in the background," "never appear[ed] by itself or in a close-up;" was either "out of focus or obscured," and displayed only for "a few seconds at a time." The second, *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 218 (2d Cir. 1998), involved copying of photographs that was "filmed at such distance and so out of focus that a typical viewer program would not discern any decorative

effect that the work of art contributes to the set." Moreover, the photographs were "displayed in poor lighting and at great distance" and appeared "fleetingly and [were] obscured, severely out of focus, and virtually unidentifiable[.]" *Id.* Given the clear factual distinctions between those cases and the one before us, the Court agrees that *Gottlieb* and *Sandoval* are instructive – just not in the way that Complex suggests.

Based on the foregoing, the Court finds that a reasonable jury could find that Complex's use of the Photograph met the test of substantial quantitative similarity and was not *de minimis* as a matter of law.

### 2. *Whether Complex's Use of the Photograph Constitutes Fair Use*

Next, Complex argues that its use of the Photograph is protected as a matter of law by virtue of the fair use defense.

As the Supreme Court has explained, the overriding purpose of copyright is "'[t]o promote the Progress of Science and useful Arts....'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 574 (1994) (quoting U.S. Const. Art. I, § 8, cl. 8). The Copyright Act advances this purpose by permitting the public to draw upon copyright materials without the permission of the copyright holder in certain circumstances. *See* 17 U.S.C. § 107. Section 107 requires a court to consider the following four nonexclusive factors, which are to be weighed together, to assess whether a particular use is fair:

1. The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2. The nature of the copyrighted work;

3. The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4. The effect of the use upon the potential market for or value of the copyrighted work.

10

*Id.* "The determination of fair use is a mixed question of fact and law," *Swatch Grp. Mgmt. Serv. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014), and is an "open-ended and context-sensitive inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006). "Although defendants bear the burden of proving that their use was fair, they need not establish that each of the factors set forth in § 107 weighs in their favor." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476–77 (2d Cir. 2004) (internal citation omitted).

While "it is possible to resolve the fair use inquiry on a motion to dismiss under certain circumstances," "there is a dearth of cases granting such a motion." *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015) (citing *M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 07 Civ. 7371 (JGK), 2008 WL 2696168, at *10 (S.D.N.Y. July 7, 2008) (noting that a similarly situated defendant could not identify "any cases in this Circuit that have granted a motion to dismiss on the grounds of fair use")). Nonetheless, given the possibility, however "slim," of resolution at this stage, *id.*, the Court will undertake a review of each of the fair use factors.

### i. The 'Purpose and Character of Use' Factor Weighs in Hirsch's Favor

The first statutory factor, the purpose and character of the use, is "[t]he heart of the fair use inquiry." *Blanch*, 467 F.3d at 251 (internal quotation marks and citation omitted). The essence of this factor is whether the copier's use is "transformative," which asks "whether the new work merely 'supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message[.]" *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013) (quoting *Campbell*, 510 U.S. at 579). In addition to contemplating whether a work is transformative, inquiry under the first factor also looks to the commercial nature of the use and "the propriety of [a]

11

defendant's conduct." *NXIVM*, 364 F.3d at 477–78 (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562–63 (1985)).

Complex argues that its use of the Photograph was transformative, because the Photograph "appears as part of a video segment featuring Complex Media's commentator, [Emily] Oberg, providing commentary about the Shmurda case and comparing the convictions of Shmurda and his associates, including Boderick," which gives it "a purpose beyond the Page Six article." (Def.'s Br. at 11.)

Upon the Court's independent review of the Complex Video and drawing all reasonable inferences in Hirsch's favor, Complex has not persuaded the Court that is the case.

Complex made no changes to the original Photograph. The Photograph appeared in the Video over discussion about Boderick's imprisonment stemming from gang-related violence, his conduct during a sentencing proceeding, and his affiliation to Shmurda – the exact same matters that were the subject of the Page Six article. That the Photograph was contained in a news report does not suffice to cloak Complex's use as fair at this stage. "The promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report.'" *Harper & Row*, 471 U.S. at 557; *see also Swatch Grp.*, 756 F.3d at 85. Further development of the record is needed to clarify what, if any, new insights and understandings were created by Complex's use of the Photograph such that the Video "imbue[d] [the Photograph] with a character[] different from that for which it was created." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2175 (2017).

Moreover, Complex misunderstands the nature of the transformative effect inquiry. Section 107 provides that the display of a copyrighted image may be transformative "where the use serves to illustrative criticism, commentary, or a news story *about that* work." *Barcroft*

12

*Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (citing 17 U.S.C. § 107) (emphasis in original). It does not apply where images are used simply as "illustrative aids" depicting the subjects described in a news article. *Id.*; *see also BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 404–05 (S.D.N.Y. 2016). Complex has not established that its Video did anything more than merely describe the subject of Hirsch's Photograph, newsworthy or not. That conduct alone does not suffice as transformative. "Newsworthy contents will rarely justify unlicensed reproduction; were it otherwise, photojournalists would be unable to license photos, and would effectively be out of a job." *BWP Media USA*, 196 F. Supp. 3d at 406 n.6.

Finally, while less prominent considerations under the first factor, the Court notes that Complex appeared to copy the Photograph for commercial purposes, displaying its Video adjacent to advertisements, and omitted Hirsch's authorship credit. These facts gives rise to inferences of commercial use and of bad faith, which undermine Complex's claim that the first statutory factor breaks in its favor.

In short, the first statutory fair use factor weighs against dismissal.

### ii.    The Nature of the Copyrighted Work

The second statutory factor favors dismissal, but not decidedly so. This factor, "the nature of the copyrighted work," "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. Courts have generally adopted two types of distinctions in their analysis of the second factor: (*i*) whether the work is expressive or creative, such as a work of fiction, or more factual with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (*ii*) whether the

work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower. *Blanch*, 467 F.3d at 257.

Courts in the Second and other Circuits have found that, when the original photographic work was created for news-gathering purposes, this factor favors fair use. *See, e.g.*, *Hirsch v. CBS*, 2017 WL 3393845, at *6; *N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 620 (S.D.N.Y. 2015); *Katz v. Google Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015). However, courts traditionally have also afforded this factor little weight, characterizing it as "rarely [] determinative." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 175 (2d Cir. 2001); *accord Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 102 (2d Cir. 2014); *Hirsch v. CBS*, 2017 WL 3393845, at *6; *Estate of Smith v. Cash Money Records, Inc.*, 253 F. Supp. 3d 737, 751 (S.D.N.Y. 2017).

Under these circumstances, the Court assigns the second statutory factor much less heft than the first.

### iii.     The Amount and Substantiality of the Portion Used

Complex argues that the third statutory factor, the "amount and substantiality of the portion used in relation to the copyrighted work as a whole," favors it because it used the Photograph for only a few seconds. (Def.'s Br. at 9.) Its argument appears in its brief under the caption calling for a finding of *de minimis* use, leaving the Court to conclude that it simply has conflated the two matters.

The third statutory factor, however, is both analytically and substantively distinct from the *de minimis* analysis. The latter assesses whether the defendant copied a material amount of expression such that the original and infringing works are, as a matter of law, "substantially similar," which, as noted earlier, is a necessary element for stating a cognizable claim for copyright infringement. The former arises in connection with fair use, which is an affirmative defense to infringement. "Examination under the third factor of the substantiality of the portion

14

of the copyrighted work copied is a much different type of inquiry, however, from the one-dimensional prima-facie-[*de minimis*] inquiry: the third-factor substantiality inquiry is a matter of degree, not an absolute, and is made in conjunction with consideration of other factors, principally the first and fourth factors." 4 William F. Patry, *Patry on Copyright* § 10:141 (September 2018).

Substantively, the third factor considers "whether the quantity and value of the materials used, are reasonable in relation to the purpose of the copying." *Blanch*, 467 F.3d at 257 (quoting *Campbell*, 510 U.S. at 586). This inquiry focuses, not on how much of the secondary work comprises the original, but on the proportion of the work used, whether the defendant used more than was necessary, and the "purported justifications" for the use. *HathiTrust*, 755 F.3d at 96. As the Supreme Court explained, "[A] taking may not be excused merely because it is insubstantial with respect to the *infringing* work." *Harper & Row*, 471 U.S. at 565 (emphasis in original).

For many of the same reasons discussed earlier, *supra* at 5–10, this factor cuts against a finding of fair use. Complex used the entirety of the Photograph, and reproduced it clearly and in full color for two seconds. To the extent the Video was intended to report on Boderick's outburst before the sentencing court, Complex could have simply displayed the Page Six headline to convey the same message. Instead, it included the Photograph exactly as it was intended to be used by its creator. Indeed, Complex has not attempted to make any chowing that its use of the Photograph was no greater than necessary. Accordingly, the third factor favors Hirsch.

### iv.    The Effect of the Use

The fourth statutory factor, the "effect of the use upon the potential market for or value of the copyrighted work," looks to whether an infringer has usurped the market a copyright holder's

work, or any markets that the copyright holder could reasonably be expected to enter. *Campbell*, 510 U.S. at 593. Whether the secondary use is transformative is important to the usurpation analysis, as "[t]he more transformative [the secondary use], the less likel[y] that [it] substitutes for the original." *Cariou*, 714 F.3d at 709.

Complex does not contest that the fourth factor favors its position, nor could it under the circumstances. Crediting Hirsch's allegations, which the Court must do at this stage, Complex operates within the core market in which Hirsch operates. Indeed, Hirsch sustains his business by licensing Photographs, such as the image at issue here, to news organizations. Coupled with the fact that, upon the Court's visual inspection, the Video is not so obviously transformative so as to entitle it to special protection, *see supra* at 11–13, this factor weighs heavily against fair use.

Having considered all four fair use factors, three of which counsel against a finding of fair use, the Court finds that fair use is not a basis for dismissal at this juncture.

3. *Whether Hirsch Authorized Users to Copy the Photograph*

Complex argues that the Amended Complaint should be dismissed, because Hirsch has permitted "unrestricted copying and/or displaying of the Photo[graph]." (Def.'s Br. at 2.) This is so, according to Complex, because he has licensed the Photograph to the New York Post, which permits free and easy sharing of the Page Six article by enabling readers to click on "share" icons that disseminate the article via e-mail, on various social media platforms, and through direct copying of the hyperlink.

A copyright owner has the exclusive right to publicly "display" a copyrighted photograph. 17 U.S.C. § 106(5). The Copyright Act, in turn, defines "display" to mean to "show a copy of [the copyrighted work], either directly or by means of a film, slide, television, image, or any other device or process . . . ." 17 U.S.C. § 101. The owner's exclusive right

16

includes the right to "transmit or otherwise communicate . . . a display of the work . . . to the public, by means of any device or process," which itself is defined to encompass devices or processes "now known or later developed." *Id.*

Complex has identified no authority that persuasively supports the novel position it takes today that a licensor forfeits her exclusive rights to display her copyrighted work where, absent an express agreement to the contrary, the licensee enables third parties to freely share the licensee's own copyrighted work, which incorporate the work of the licensor. Instead, it cites two cases, *Hines v. Ovestock.com Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), and *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 20 (2d Cir. 2002), which, it claims, stand for the proposition that "no cause of action [can exist] against a viewer that takes advantage of [a] website's offer to copy [] content at will." (Defs.' Br. at 13.) These cases have no bearing on the matter at hand for two reasons.

*First*, the facts of these cases are entirely distinct. Both cases sounded in breach of contract, examining whether visitors were bound by a website's terms of service. In *Hines*, the primary issue was whether a consumer, suing a retailer for breach of contract, fraud, and violations of N.Y. Gen. Bus. L. §§ 349–50, had assented to an arbitration clause. 688 F. Supp. 2d at 366. In *Specht*, the Second Circuit considered whether an individual who downloaded free software from a website could be said to have knowingly agreed to certain restrictions contained in the website's terms of use, which appeared under a separate tab. 306 F.3d at 20. Neither case concerned copyright law nor stands for the broad proposition that Complex submits they do.

*Second*, assuming *arguendo* that the proposition offered by Complex were supported by those cases, that proposition lends no support to Complex in light of the factual allegations embodied in the Amended Complaint. As pleaded, Complex did not "take advantage" of the

"share" icons to "copy [] content at will," and, therefore, cannot avail itself of whatever safe harbor those icons purport to provide. This might be a different case if Complex shared the Photograph on its Facebook, Twitter or Google Plus page, as provided for by the icons on the article's webpage, and was being sued for copyright infringement for promotion over its social platforms. It might also be a different case if the "share" icons provided for a screenshot-and-share function, giving Complex at least a colorable argument that the particular conduct it is accused of here was contemplated by the parties. But neither of those things occurred – at least not as alleged in the Amended Complaint, whose allegations the Court presumes to be true for present purposes. Accordingly, the proposition for which *Hines* and *Specht* are cited does nothing to advance Complex's position.

More broadly, Complex's position reflects a fundamental misunderstanding of Hirsch's pleading burden. As noted, to state a claim for copyright infringement, a plaintiff must establish ownership of a valid copyright and copying. *Feist*, 499 U.S. at 361. He need not establish at the pleading stage that the copying was unauthorized. Authorization is an affirmative defense that the defendant bears the burden of proving. 6 William F. Patry, *Patry on Copyrights* § 19:10 (September 2018); *see also Muhammed-Ali v. Final Call, Inc.*, 2016 WL 4248567, at *3–4 (7th Cir. Aug. 10, 2016); *accord Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995). At this stage, Complex has fallen well short of carrying that burden. Without the terms of the license agreement, the Court cannot determine at this juncture whether Hirsch's agreement with the New York Post authorized third-party readers to copy Hirsch's Photograph. Nor can it say that Hirsch ever contemplated such conduct.

The Court concludes that discovery is needed to develop a factual record indicating whether authorization of the sort alleged by Complex was ever given. As a matter of law,

however, there simply is no support for Complex's position that permitting readers to share the Page Six article on various platforms constituted authorization – express or implied – by Hirsch to copy his Photograph, thereby defeating his *prima facie* case for copyright infringement.

For the reasons stated above, Complex's motion to dismiss is denied.

### B.  Complex's Motion to Strike Certain Pleadings is Denied

At the parties' initial pretrial conference on September 7, 2018, the Court told the parties orally that Complex's motion to strike was denied.  The Court now writes to elaborate on the basis for its decision.

Fed. R. Civ. P 12(f) provides courts a means to remove material from a pleading that it finds "redundant, immaterial, impertinent, or scandalous."  "Motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 829 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).  It is settled in this Circuit that the motion will be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Id.* (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

Complex argues that pleadings relating to prior lawsuits against Complex for copyright infringement (*see* Am. Compl. ¶¶ 11–13) should be stricken, because they relate to matters that were either settled or are pending, and therefore are immaterial as a matter of law within the meaning of Rule 12(f).  (Def.'s Br. at 15–16.)  Complex relies on *Lipsky v. Commonwealth* and other district court cases citing *Lipsky*, for this assertion.  However, a close reading of *Lipsky* makes clear that it does not stand for the sweeping proposition for which Complex offers it.

19

In *Lipsky*, the Second Circuit held that "neither a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings under the facts of this case." *Id.* at 893. *Lipsky* relied on the fact that Fed. R. Evid. 410 "prohibits a plea of nolo contedere from being later used against the party who so pleaded," and noted that "nolo pleas have been equated with consent decrees" for purposes of the provision at issue. *Id.* Because the consent decree could not be used as evidence in a subsequent lawsuit, the court reasoned that the complaint from that action was also immaterial under Fed. R. Civ. P. 12(f). In reaching its conclusion, *Lipsky* reiterated the general rule that motions to strike pleadings as immaterial should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Id.*

Despite Complex's assertion to the contrary, the court did not hold that a complaint may never reference allegations from separate proceedings. Admittedly, some courts have committed the same error as Complex and offered *Lipsky* as standing for such a sweeping proposition. *See, e.g.*, *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009). Many other courts, however, have identified *Lipsky*'s narrow holding and rejected attempts by litigants to strike pleadings that reference allegations from other proceedings. *See Rodriguez v. City of New York*, No. CV1600214ENVST, 2016 WL 3264166, at *3 (E.D.N.Y. June 13, 2016); *Martinez v. Lvnv Funding, LLC*, No. 14CV00677RRMST, 2016 WL 5719718, at *4 (E.D.N.Y. Sept. 30, 2016); *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 517 n.10 (S.D.N.Y. 2016); *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11 Civ. 6805, 2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013); *In re Bear Stearns Mortg. Pass–Through Certificates Litig.*, 851 F.Supp.2d 746, 768 n. 24 (S.D.N.Y.2012); *Johnson v. M & M Commc'ns, Inc.*, 242 F.R.D. 187, 189 (D. Conn. 2007); *accord In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 621 (S.D.N.Y. 2014). The Court finds

persuasive the reasoning of these case and, therefore, declines Complex's invitation to adopt a

bright-line rule prohibiting citations to allegations from other proceedings that have not been

decided on the merits.

Because Complex has otherwise made no effort to explain why allegations of past

copyright infringement would be irrelevant to the case at bar, the Court denies the motion to

strike.  Indeed, discovery may lead to admissible evidence regarding Defendant's alleged pattern

and practice of infringement that may prove relevant.

### C.  Hirsch's Motions for Partial Summary Judgment and Judicial Notice are Denied

Hirsch has move for partial summary judgment on the issue of Complex's liability for

copyright infringement.  This motion is denied without prejudice as premature.  Where, as here,

there has been no discovery and the non-movant has not yet filed a responsive pleading,

summary judgment is inappropriate.  *See, e.g.*, *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 23

F. Supp. 3d 173, 188–89 (S.D.N.Y.2014) (quoting Fed. R. Civ. P. 56 Advisory Committee

Notes); *see also* Fed. R. Civ. P. 56(d).  Indeed, Hirsch even concedes that the motion is

premature, noting in his moving papers that Complex may raise in its answer affirmative

defenses of equitable estoppel, acquiescence, waiver and unclean hands.  (Pl.'s Mem. of Law in

Supp. Summ. J. at 24–25, Dkt. No. 19.)  Without those defenses before it, the Court cannot

possibly entertain whether they could be meritorious.

The Court emphasizes that its decision to deny Complex's motion to dismiss is not the

same as a determination on the merits about the applicability of the defenses Complex offered.

Further development of the record may well establish that Complex's use was fair, authorized, or

otherwise subject to another defense.  Alternatively, it may well establish Complex's liability for

infringement.  For now, the Court stresses that its decision denying Complex's motion to dismiss is not tantamount to a determination on the merits of either party's case.

Having denied Plaintiff's motion for partial summary judgment, the Court also denies Plaintiff's motion for judicial notice as moot.

## CONCLUSION

For the reasons stated above, all motions are denied.  The Clerk of Court is respectfully directed to close all open docket entries.


Dated: December 10, 2018

_____
Chief Judge

TO ALL PARTIES BY ECF